UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHLEEN WESTFIELD,

Plaintiff,

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1]

Defendant.

Case No. 1:23-cv-00584-HBK

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[2]

(Doc. Nos. 21, 25)

Kathleen Westfield ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 21, 25). For the reasons stated, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the

[1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social Security. (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 6).

Commissioner's decision.

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income on December 24, 2020, alleging a disability onset date of March 30, 2017. (AR 302-08). Before the hearing, the alleged onset date was amended to December 24, 2020. (AR 55, 415). Benefits were denied initially (AR 120-35, 164-69) and upon reconsideration (AR 136-57, 173-78). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on January 12, 2022. (AR 42-79). Plaintiff testified at the hearing and was represented by counsel. (*Id.*). The ALJ denied benefits (AR 12-34) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 52 years old at the time of the hearing. (*See* AR 327). She has her associate degree in science and a license in massage therapy. (AR 51-52). She lives with her adult daughter and 17-year-old son. (AR 50). She has no past relevant work history. (AR 26, 73). Plaintiff testified she is unable to work because she is up and down emotionally, and "fighting [her] anxiety constantly" especially when dealing with "other people." (AR 56). She cannot pay attention long enough to watch a 30-minute television show, and she does not socialize or have any "personal friends." (AR 59-60). Plaintiff testified that she thinks she might "hurt or say things to people that [she] worked with" if she was in a work situation. (AR 68-69). She reported it can take over four days to answer three questions for the class she is taking, she is distracted by "back and forth conversations" in her head, and she gets "lost" in conversations. (AR 69-71). Plaintiff reported she uses marijuana daily and it is not prescribed. (AR 66).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 24, 2020, the amended alleged onset date, and the application date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairment: posttraumatic stress disorder (PTSD), depressive disorder, anxiety disorder, personality disorder, substance abuse, and unspecified schizophrenia spectrum and other psychotic disorder. (AR 17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform simple, routine, and repetitive tasks but not at a production rate or pace (e.g. assembly line work); she is able to perform simple work-related decisions; she is able to tolerate few changes in a routine work setting defined as performing the same duties at the same station or location day-to-day; she can have occasional interaction with supervisors; she can have occasional contact with coworkers with no tandem tasks or team type activities; and she can have no contact with the public.

(AR 20). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 26). In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including machine packager, cleaner, and hand packager. (AR 27). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the

Social Security Act, since December 24, 2020, the amended alleged onset date, and the date the application was filed. (AR 28).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issue for this Court's review: whether the ALJ erred at step five. (Doc. No. 21 at 11-19).

## VII. DISCUSSION

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. The Commissioner can meet this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). If the hypothetical does not reflect all the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

In addition, the occupational evidence provided by a vocational expert should be consistent with the Dictionary of Occupational Titles ("DOT"). *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). "The [DOT], a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listing in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled. . . . For a difference between an

expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. That means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); *see also Martinez v. Colvin*, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) ("An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies the claimant would be able to perform that job."). The ALJ may rely on VE testimony that conflicts with the DOT as long as there is "persuasive testimony" to support the deviation. *Massachi*, 486 F.3d at 1153 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the vocational expert ("VE") testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as machine packager (DOT 920.685-078), cleaner (DOT 381.687-018), and hand packager (DOT 920.587-018). The VE confirmed at the hearing that there are no conflicts "apparent or otherwise between the DOT's requirements and [the RFC] hypothetical limitations." (AR 76); *see Massachi*, 486 F.3d at 1153 ("SSR 00-4p further provides that the adjudicator 'will ask' the [VE] 'if the evidence he or she has provided' is consistent with the [DOT]"). Based on the VE testimony, the ALJ concluded at step five that "considering [Plaintiff's] age, education, work experience, and [RFC], [she] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (AR 27). Plaintiff argues the ALJ failed to identify and resolve multiple conflicts between the DOT and the vocational expert testimony regarding all three of the identified occupations; and correspondingly erred in finding that she could perform a significant number of jobs in the national economy. (Doc. No. 21 at 11-19).

First, Plaintiff argues DOT requirements for all three representative jobs identified by the VE conflict with the RFC limiting Plaintiff to "performing the same duties at the same station or location day-to-day." (Doc. No. 21 at 12-15). Specifically, Plaintiff argues, without citation to legal authority, it is "*reasonable to assume* that there are many different 'essential, integral or

expected' 'duties' that are required to be performed in order to tend to the various enumerated functions/duties" in the DOT descriptions of the occupations identified by the VE that would require Plaintiff to "move to different work locations or even building locations," which creates an "apparent conflict" with the work setting limitations assessed in the RFC. (Doc. No. 21 at 13-15 (emphasis added)). In support of this argument, Plaintiff cites each of the jobs identified by the VE and emphasizes in bold type what she has identified as specific "essential, integral or expected" duties in apparent or obvious conflict with the RFC limitations. (*Id.*). First, Plaintiff cites the DOT description of machine packager as

> Tending machine that performs one or more packaging functions, such as **filling, marking, labeling, banding, tying, packing, or wrapping containers: Starting** machine and observing operation to detect malfunctions of machine. **Stopping** machine and reporting malfunction to supervisor. Makes minor adjustments or repairs, such as opening valves, changing forming and cutting dies, setting guides, or clearing away damaged product containers. Inspects filled container to ensure that product is packaged according to specifications.

(*Id.* at 13) (emphasis in Plaintiff's brief) (arguing the DOT description would "logically require" Plaintiff to move to different stations to perform the tasks and move to various locations to make repairs and attend to the machine); DOT 920.685-078, *available at* 1991 WL 687942. Second, cleaner, industrial, is described in Plaintiff's brief as

> Keeping **working areas** in production departments of industrial establishment in clean and orderly condition, performing any **combination of the following duties: Transports raw materials and semifinished products or supplies between departments or buildings** to supply machine tenders or operators with materials for processing, using **handtruck**. **Arranges boxes, material, and handtrucks or other industrial equipment** in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, **using brushes, airhoses, or steam cleaner**. Cleans screens and filters. Scrubs processing tanks and vats. Cleans floors, **using water hose, and applies floor drier**. Picks up reusable scrap for salvage and stores in containers. Performs other duties as described under CLEANER (any industry) I Master Title.

(*Id.* at 14) (emphasis in Plaintiff's brief) (arguing it is "reasonable to assume" using the tools and equipment, and cleaning "various areas" would require Plaintiff to move to different stations and locations); DOT 381.687-018, *available at* 1991 WL 673258. Finally, hand packager is described as

> Packages materials and products manually, performing any combination of the following duties: Cleans packaging containers. Lines and pads crates and assembling cartons. Obtains and sorts products. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours products into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers **at each step of packaging process**. Records information, such as weight, time, and date packaged.

(*Id*. at 14) (emphasis in Plaintiff's brief) (arguing it is "reasonable to assume" that tasks such as lining, wrapping, padding, assembling, weighing, nailing, gluing, labeling, packing, inspecting, and recording "at each step of the packaging process" would require to move from different work stations "or even building locations depending on where each part of the 'packaging process' is located"); DOT 920.587-018, *available at* 1991 WL 687916.

In response, Defendant argues:

> not only is there no obvious or apparent conflict, there is no conflict whatsoever. . . Plaintiff relies on her own interpretation of the DOT's descriptions of machine packager, cleaner, and hand packager. The DOT's description of any given occupation, however, 'includes the collective description of numerous jobs and lists maximum requirements of the job as generally performed. Accordingly, that description may include 'tasks that aren't essential, integral, or expected parts of a job.' Plaintiff cannot show an obvious or apparent conflict merely by pointing out that occupations can conceivably include 'various tasks.'

(Doc. No. 25 at 5 (citing *Gutierrez*, 844 F.3d at 807)). The Court agrees. Plaintiff does not cite, nor does the Court discern, any legal authority to support Plaintiff's argument that the portions of the DOT descriptions highlighted by Plaintiff are "essential, integral, or expected" duties that would rise to the level of an "obvious or apparent" conflict with VE testimony and the assessed RFC limiting Plaintiff to "tolerating few changes in routine work setting defined as performing the same duties at the same station or location day-to-day." Rather, Plaintiff highlights "different duties" or "various tasks" in each of the DOT descriptions and asks the Court to "assume" conflicts between the descriptions and VE testimony that Plaintiff would be able to perform those

jobs with the assessed limitation regarding changes in routine work setting.[3] However, "not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are." (*See* Doc. No. 25 at 5); *Gutierrez,* 844 F.3d at 807. Moreover, as noted by Defendant, Plaintiff mischaracterizes the hypothetical propounded to the VE, and the resulting RFC, as imposing a "rigid limitation to same duties, same station and same location" which would "logically result in some, if not considerable erosion of the occupational base." (Doc. No. 21 at 13). A plain reading of the RFC defines the limitation of "few changes in a routine work setting" as "performing the same duties at the same station *or* location day-to-day," as opposed to Plaintiff's suggestion that the RFC limits her to performing a singular duty at a singular station. (*See* Doc. No. 25 at 5-6 ("There is nothing apparent in these occupation descriptions that suggests an individual could not perform the same 'various tasks' at the 'same station or location.'")). For the foregoing reasons, the Court finds no apparent conflict between the jobs identified by the VE and the assessed RFC limitation on tolerating changes in a routine work setting "defined as performing the same duties at the same station or location day-to-day."

Second, Plaintiff argues the ALJ erred by failing to resolve a conflict between the RFC limitation to "few changes in a routine work setting defined as performing the same duties at the same station or location day-to-day" and the Reasoning Level 2 DOT requirements of the three jobs identified by the VE. [4] (Doc. No. 21 at 16 (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807

[3] Plaintiff also argues the DOT descriptions at issue here "involve 'essential, integral, or expected' work requirements in rather esoteric, technical and mechanized 'industrial' settings that are not necessarily familiar to the average person. This lack of general familiarity with this type of industrial work, triggers the ALJ's duty to further scrutinize the VE's testimony for 'conflict,' especially given the rigidity of the ALJ's concrete RFC restrictions regarding change in the work environment." (Doc. No. 21 at 15) (citing *Gutierrez*, 844 F.3d at 808) ("where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required."). However, *Gutierrez* does not impose a higher standard on the ALJ to inquire after the VE testimony merely because it is "technical" or in an "industrial setting"; rather, the court noted a lesser scrutiny required in a more "familiar" job like cashiering. Regardless, as discussed in detail supra, Plaintiff failed to identify any specific "essential, integral or expected" requirements of the DOT job requirements of machine packager, cleaner, or hand packager that that are "at odds" with the VE testimony such that it would be "fairly characterized" as an obvious or apparent conflict. (*See id.*).

[4] In the DOT, each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Salas v. Astrue*, 2011 WL 2620370 at *5 (E.D. Cal. June 29, 2011). The GED includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high). *Id.*

F.3d 996, 1003 (9th Cir. 2015)). Specifically, Plaintiff contends that "taken at face value," the "ALJ's concrete limitations to same duties, same station and same location" assessed in the RFC are more akin to reasoning level 1 jobs requiring the ability to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job," as opposed to the reasoning level 2 jobs identified by the VE that require the ability to "[d]eal with problems involving a few concrete variables in or from standardized situations." (*Id.*); *see* DOT, App. C., 1991 WL 688702. Defendant argues these requirements "clearly concern dealing with problems – not 'change in situations,' as Plaintiff claims." (Doc. No. 25 at 6) (noting "Plaintiff elsewhere concedes the DOT is 'silent on the issue of change' in the work environment.").

Here, Plaintiff cites no legal authority in support of this specific argument, and a plain reading of the requirements of Reasoning Level 2 does not support an apparent or obvious conflict between the enumerated limitations regarding "problems" or "situations" encountered on the job, and the assessed RFC limitation on Plaintiff's ability to tolerate "few changes in a routine work setting." (*See* AR 20); *see also Kelly P. v. Saul*, 2019 WL 3573591, at *5 (C.D. Cal. Aug. 6, 2019) ("An occupation that requires a worker to employ Reasoning Level 2 by dealing with problems involving a few concrete variables does not raise an obvious or apparent conflict with [p]laintiff's limitation to only minimal changes in the workplace setting or routine.") (collecting cases). Moreover, as noted by Defendant, the RFC limited Plaintiff to "simple, routine and repetitive tasks" and "simple work-related decisions," consistent with reasoning level 2 DOT requirements. (Doc. No. 25 at 6); *see Cervantes v. O'Malley*, 2024 WL 1173827, at *4 (E.D. Cal. Mar. 19, 2024) ("The Ninth Circuit has repeatedly indicated that the ability to perform 'simple' work corresponds with Reasoning Level 2 abilities" and "courts also indicated there is not a conflict between simple work and Reasoning Level 2") (collecting cases). Thus, the Court finds no apparent conflict between Plaintiff's RFC and the Reasoning Level 2 requirements of the jobs identified by the VE.

Third, Plaintiff argues DOT requirements for the machine packager and hand packager jobs identified by the VE conflict with the RFC limiting Plaintiff to "perform simple, routine, and repetitive tasks but not at a production rate or pace (e.g. **assembly line work**)." (Doc. No. 21 at

17 (emphasis in original). In support of this argument, Plaintiff cites portions of the DOT description of machine packager responsibilities including tending, starting, and stopping a machine, and the DOT description of hand packager as requiring the ability to "start, stop and regulate[] speed of conveyer," "inspect material, product, and container at each step of the packing process," and "record information, such as weight, time, and date packaged." (Doc. No. 21 at 17-18). However, as above, a plain reading of these descriptions indicates they do not include any requirement regarding production *rate or pace*, and/or "assembly line work." Moreover, as noted by Defendant, courts have specifically found no apparent conflict between an RFC assessing "no fast-paced work, such as moving assembly lines" and the DOT description of machine packager and hand packager. *See Bryant v. Colvin*, 2014 WL 1831016, at *3-4 (C.D. Cal. May 7, 2014); *see also James W.K. v. Kijakazi*, 2023 WL 1861214, at *6 (N.D. Ok. Feb. 9, 2023) ("there is nothing in the DOT description for the hand packager job that indicates it requires very fast-paced work"). Likewise, the Court finds no apparent conflict between the DOT requirements for hand packager and machine packager jobs identified by the VE and the assessed RFC.[5]

Based on the foregoing, it was reasonable for the ALJ to rely on the VE testimony to support the finding at step five that there are jobs in significant numbers in the national economy that Plaintiff can perform, including machine packager, cleaner, and hand packager. The Court finds no error at step five.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment

[5] Plaintiff further argues that if hand packager and machine packager jobs are eliminated due to conflict between the RFC and the DOT descriptions of the jobs identified by the VE, the only remaining job is cleaner, with 18,000 jobs in the national economy, which "is not considered a 'significant number of jobs.'" (Doc. No. 21 at 18-19). It is unnecessary for the Court to consider this argument because, as discussed in detail above, the Court finds no apparent conflict between the assessed RFC and the three jobs identified by the VE. The 190,000 aggregate jobs of hand packager, machine packager, and cleaner identified by the VE at the hearing meets the legal threshold for a significant number of jobs in the national economy. *See Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 529 (9th Cir. 2014) (holding the availability of 25,000 national jobs presents a "close call," but still constitutes a significant number of jobs).

as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ did not err at step five. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 21) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 25) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated: June 3, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE